**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| DAVID A. SMITH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-13-0565 |
| | § | |
| HOUSTON PILOTS, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

On September 9, 2011, David Smith sued the Houston Pilots in Texas state court, asserting claims for quantum meruit and unjust enrichment, money had and received, and conversion. (Docket Entry No. 23, Ex. 29). On February 13, 2013, Smith amended his petition to include claims for unpaid pension benefits. (*Id.*). The Houston Pilots removed on the basis that some of Smith's state-court claims were preempted by the Employee Retirement Income Security Act ("ERISA"). (Docket Entry No. 1). Smith's motion to remand was denied. (Docket Entry No. 10). The Houston Pilots then moved for summary judgment on all claims, (Docket Entry No. 23), and sought attorney's fees, (Docket Entry No. 25).[1]

Based on the pleadings, the motions and supporting materials, and the governing law, the court grants the motion for summary judgment and denies the motion for attorney's fees. Final judgment is entered by separate order. The reasons for these rulings are set out in detail below.

---

[1] The Houston Pilots filed a duplicate motion for summary judgment. (Docket Entry No. 24). The case filings all reference Docket Entry Number 23 as the operative summary judgment motion. The duplicate motion, (Docket Entry No. 24), is denied as moot in light of the earlier filing. The Houston Pilots's motion for an oral hearing on the pending motions, (Docket Entry No. 30), is denied.

## I.      Factual Background

The Houston Pilots is an association of independent contractors whose primary job is to guide ships in and out of the Houston Ship Channel.  Pilots must be licensed by the federal government and the State of Texas.  *See* TEX. TRANS. CODE §§ 66.031, 66.033(4).  Dispatching, administrative, and various support services for the Houston Pilots members are provided by the Beatty Street Corporation.  (Docket Entry No. 23, Ex. 6, ¶ 3).  Beatty Street accounts for the revenues earned by the individual pilots, pays various expenses on their behalf, and distributes the remaining revenue based on the number of days each pilot worked.  (*Id.*).  Each member of the Houston Pilots must pay into the association's "Common Fund."  The Common Fund compensates Beatty Street for the services it provides.  (*Id.*, Ex. 6, ¶ 6).  Each member must also pay his or her own personal expenses, "which includes health insurance, pension contributions, profit sharing contributions, and repayment of any personal loans made by the Houston Pilots to a member." (*Id.*). Beatty Street uses the Common Fund to pay administrative costs and dispatching services as well as pre-paying the pilot's health insurance premiums and pensions contributions.  (*Id.*, Ex. 6, ¶ 3).

Under the Houston Pilots Rules and Regulations, pilots work 14-day "On-Time" periods followed by 14 days of "Off-Time."  (*Id.*, Ex. 6, ¶ 4).  Each day worked earns a pilot one day of paid Off-Time.  (*Id.*).  Monthly disbursements from Beatty Street are based on the sum of On-Time days worked and paid Off-Time days.  (*Id.*).  Pilots are also given 365 lifetime days of half pay, or Paid Time Off ("PTO"), which may be used to satisfy one day's On-Time requirement.  (*Id.*, Ex. 6, ¶ 5).

When a pilot completes his required monthly On-Time, his personal expenses and contributions to the Common Fund are automatically deducted from his monthly revenue disbursement.  (*Id.*, Ex. 6, ¶ 7).  Even if a pilot does not complete the required On-Time, he is still

responsible for paying his personal expenses and making his contributions to the Common Fund. (*Id.*, Ex. 6, ¶ 8).  A pilot who does not complete his required On-Time may avoid paying his personal expenses and making contributions to the Common Fund by applying accrued PTO or by having another pilot work on his behalf to satisfy his On-Time obligations.  (*Id.*).

When one pilot has another pilot work on his behalf, Beatty Street receives the revenue as though the original pilot had completed his On-Time himself.  The revenue is dispersed to the original pilot minus personal expenses and Common Fund obligations, and the original pilot forwards the money to the surrogate.  (*See id.*, Ex. 6, ¶ 13).  A nonworking pilot can use this approach to satisfy his payment obligations without using his accrued PTO.  (*See id.*).

A pilot who is medically unfit for duty cannot have another pilot work on his behalf.[2]  (*Id.*, Ex. 6, ¶ 9). The Houston Pilots does not assign jobs to a pilot who is not fit for duty.  (Docket Entry No. 23, Ex. 21 at 75).  A pilot who is unfit for duty and not assigned a job cannot use another pilot to work on his behalf and cannot cover another pilot's job.  (*Id.*)  If a pilot does not work, does not apply his accrued PTO, and does not have another pilot work on his behalf, Beatty Street advances payment for that pilot's obligations and invoices the pilot.[3]

---

[2]  In his deposition, Arthur F. Tuttle, a member of the Houston Pilots, stated that pilots "can't be assigned [a job] if [they] are not fit for duty. And if [pilots] can't be assigned, then there is no way to have someone work for [them].  That's been the practice . . . [t]hroughout the 22 years I've been there."  (Docket Entry No 23, Ex. 21 at 75).  Richard Moore, another member of the Houston Pilots, testified that, after being declared unfit for duty, he was unable to work or have anyone else work for him and was forced to use his PTO.  (Docket Entry No. 23, Ex. 19 at 46–47).  Moore stated that if he did not have PTO, he would have had to pay his personal and Common Fund fees out of his pocket.  (*Id.*).

[3]  Rule 2.4A of the Houston Pilots' Rules provides:

> 2.4A Expired Personal Time Off (PTO) - Payment of Expenses, (February 19, 2004) (July 21, 1986)
> A member who has received 365 days "PTO Pay", and is absent or unable to accept a call for pilotage services during his "On-Time" shall pay expenses monthly to the Common Fund for each day he is absent during his "On-Time."

(Docket Entry No. 23, Ex. 6 ¶ 8).

3

Pilots may do two types of services to satisfy the "On-Time" requirement. One type is "shift work" and the other is "bar work." (Docket Entry No. 23 at 6 n.9). Bar work is more physically demanding; it requires a pilot to board a vessel in the open ocean by climbing a ladder from a small pilot boat to the ship. (*Id.*). A pilot doing shift work boards a ship already docked using a gangway and takes the ship to another dock. (*Id.*). Up to three pilots may perform shift work at any given time. (*Id.*, Ex. 2 at 20–21). There are no rules specifying which pilot will be selected if more than three pilots request shift work for the same period. (*Id.*, Ex. 2 at 22).

Smith was a member of the Houston Pilots. In August 2008, he fell while boarding a vessel and injured his rotator cuff and back. (Docket Entry No. 31, Ex. 1). Smith does not allege that the Houston Pilots was not responsible for his injuries.[4] After the accident, Smith could no longer physically perform bar work and could only perform shift work. (Docket Entry No. 23, Ex. 1 at 17–18).

In May 2009, Thomas Pace, the presiding officer of the Houston Pilots, removed Smith from the shift-work list to make room for another pilot. (*Id.*, Ex. 2 at 21). Because Smith was physically unable to perform bar work and had been removed from the shift-work list, he missed 12 days of On-Time. (Docket Entry No. 23, Ex. 6C at HOUP 8189).

On June 25, 2009, Smith took the annual physical examination, which Coast Guard regulations required as a condition of retaining his "first-class-pilot credential." *See* 46 C.F.R. § 11.709.[5] The examining physician, Dr. Cynthia Williams, found Smith "not competent" for duty

---

[4]  *See* Docket Entry No. 23, Ex. 1 at 140: 20–23. In 2010, Smith sued the ship's operator, Sealift, for damages relating to the incident. *Smith v. Sealift*, No. 4:10-cv-148. The case was dismissed after the parties settled. (*Id.*, Docket Entry No. 68).

[5]  46 C.F.R. § 11.709(d) provides:

An individual's first class pilot credential becomes invalid on the first day of the month following the

4

based on various injuries received from the August 2008 accident. (Docket Entry No. 23, Ex. 4 at HOUP 1332). Smith completed a "Certification of Health Care Provider" form in which Dr. Williams wrote that Smith should be taken "completely off duty" and that he would not "be able to resume his duties" until after surgery and a 6–12 week recovery period. (*Id.*, Ex. 5). On July 20, 2009, Smith formally notified the Coast Guard that he would "not attempt to work under [his] license until [he was] fit for duty." (*Id.*, Ex. 4 at HOUP1348). In September 2009, Smith had cervical-fusion surgery. (*Id.*, Ex. 1 at 36).

Smith had exhausted his PTO in August 2008, well before any event relevant to this proceeding. (*See id.*, Ex. 1 at 135). After June 25, 2009, when he was declared unfit for duty, Smith did not do any work for the Houston Pilots. (*Id.*, Ex. 6, ¶ 12; Ex. 6C). From June 4, 2009 until his retirement, no other pilots worked on Smith's behalf. (*Id.*, Ex. 6, ¶ 13). Smith missed 14 days of work in June 2009. (*Id.*, Ex. 6, ¶ 12). From July 2009 through the end of his membership in the Houston Pilots in February 2010, Smith did not satisfy his On-Time obligations. (*Id.*). Because Smith did not work, have another pilot work for him, or have any remaining PTO, he began receiving invoices for his personal expenses and Common Fund obligations. (*See id.*, Ex. 6, ¶ 16). Smith was invoiced $2,019.55 for June 2009, representing 14 missed days. (*Id.*, Ex. 6E at HOUP 1552). In total, Smith was invoiced $150,535.17 for missed days between June 2009 and February 2010. ( Docket Entry No. 23, Ex. 29, ¶ 11; Ex. 6E at HOUP 1552–1561 ). Smith paid every invoice. (Docket Entry No. 23, Ex. 6, ¶ 15).

_____

first anniversary of the individual's most recent physical examination satisfactorily completed; the individual may not operate under the authority of that credential until a physical examination has been satisfactorily completed.

Eligibility for membership in the Houston Pilots requires a valid Texas branch-pilot's license and a federal pilot's license.[6]   Texas law requires the same licences for a pilot to work on the Houston Ship Channel.   TEX. TRANS. CODE §§ 66.031, 66.033.   A Texas "branch pilot's license expires on the fourth anniversary of the date it is issued or renewed."   TEX. TRANS. CODE § 66.040. Smith renewed his state license on February 9, 2002, and again on February 9, 2006.   (Docket Entry No. 23, Ex 1 at 16).   The license was up for renewal on February 9, 2010.   (*Id.*; *see also id.*, Ex. 8 at HOUP 1251) ("[Smith's] current Commission expires February 9, 2010.").

One requirement for branch-pilot license renewal is the submission of a "[d]octor's written report of a physical examination . . . indicating that Applicant is physically and mentally qualified to perform the duties required of a Branch Pilot."   (*Id.*, Ex. 8 at HOUP 1230).   On December 3, 2009, the Texas Application Review Committee ("ARC"), the organization responsible for Texas branch pilot licenses, informed Smith that it had not received the doctor's report.   (*Id.*).   On December 11, 2009, Smith had a physical examination and was again found not fit for duty.   (Docket Entry No. 31, Ex. 4 at 3).   The examining physician recommended that Smith have another surgery. (*Id.*).   In January 2010, Smith had surgery on his left shoulder.   (Docket Entry No. 23, Ex. 1 at 36).

On February 3, 2010, ARC again informed Smith that because his license-renewal application lacked the required fit-for-duty report, his application for renewal could be denied.   (*Id.*,

---

[6] *See* Docket Entry No. 23, Ex. 9 at HOUP 8157.  Section 3.2 of the Articles of Organization of the Houston Pilots reads:

> 3.2. Eligibility for Membership.  To be eligible for election to membership as a Branch Member in [the Houston Pilots], one must meet the minimum requirements of (a) having obtained and holding a valid commission as a branch pilot for the ports of Harris, County, Texas . . . [and] (b) having obtained and holding a valid federal pilots license . . . ."

(*Id.*).

Ex. 8 at HOUP 1228–29).  Smith has pointed to no record evidence suggesting that he obtained a fit-for-duty report and submitted it to ARC.  On February 10, 2010, at a regularly scheduled Houston Pilots meeting, a motion to terminate Smith's membership on the ground that he did not meet eligibility requirements was passed unanimously.  (*Id.*, Ex. 15 at HOUP 8155) ("It was announced that . . . Captain David A. Smith . . . no longer meets eligibility for Membership requirements and therefore is no longer a member of the Houston Pilots.")

Smith filed this suit in state court on September 9, 2011.  (Docket Entry No. 1, Ex. B).  He asserted causes of action for quantum meruit, unjust enrichment, money had and received, and conversion based on the invoices he paid to the Houston Pilots.  Smith's original petition alleged that, "[t]o avoid suspension and termination of his membership in the Houston Pilots," he had to pay a total of $150,535.17 in personal expenses and his share of the Common Fund.  (*Id.*, Ex. B, ¶ 11).  The petition alleged that the Houston Pilots were "double-dipping" by invoicing Smith "as if the job was not being fulfilled" even though his job was "being completed by another qualified Houston Pilot."  (*Id.*, Ex. B, ¶ 12).  Counts 1, 2, and 3 each sought recovery of the money he paid to the Houston Pilots based on this "double-dipping" theory.

On February 13, 2013, Smith filed his first amended petition.  (Docket Entry No. 1, Ex. E; No. 23, Ex. 29).  Count 1 seeks recovery for quantum meruit and unjust enrichment "for all monies paid by [Smith] in spite of the work done on his behalf, and the benefit received, by the [Houston Pilots]."  (Docket Entry No. 23, Ex. 29, ¶ 15).  Count 1 also asserts quantum meruit and unjust enrichment claims "for all pension benefits that [Smith] would otherwise be entitled to receive but for [the Houston Pilot's] arbitrary selection of February 9, 2010 as his alleged retirement date."  (*Id.*, Ex. 29, ¶ 16).  Count 2, for money had and received, alleges that the Houston Pilots "charged money

7

to [Smith] that otherwise rightfully belonged to [him] because [his] work was being performed, or [he] was not being permitted to perform shift work." (*Id.*, Ex. 29, ¶ 18).  Count 3 asserts a claim for conversion, alleging that the Houston Pilots wrongfully converted Smith's money because he "was either not permitted to perform shift work or was not permitted to have other Pilots work for him." (*Id.*, Ex. 29, ¶ 20).  Count 3 also alleges "conversion of monies in the form of retirement benefits" because the "arbitrary selection of February 9, 2010" as Smith's retirement date "improperly shortened" his "length of service for retirement calculations." (*Id.*, Ex. 29, ¶ 21).

On March 1, 2013, the Houston Pilots removed on the basis that the allegations relating to Smith's pension benefits arise under ERISA, 29 U.S.C. §§ 1001–1461.  (Docket Entry No. 1). Smith's motion to remand was denied.  (Docket Entry No. 10).  The Houston Pilots then moved for summary judgment as to all of Smith's claims, as well as attorney's fees.  (Docket Entry No. 23, 25).

## II.      The Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." FED. R. CIV. PROC. 56(a).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . ." FED. R. CIV. PROC. 56(c)(1)(A). "[T]he plain language of Rule 56[ ] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact." *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012) (citing

*Celotex*, 477 U.S. at 323).  If the burden of proof at trial lies with the nonmoving party, the movant

may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there

is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  While

the party moving for summary judgment must demonstrate the absence of a genuine dispute of

material fact, it does not need to negate the elements of the nonmovant's case. *Duffie v. United

States*, 600 F.3d 362, 371 (5th Cir. 2010).

"A fact is 'material' if its resolution in favor of one party might affect the outcome of the

lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir.

2009) (quotation omitted).  "If the moving party fails to meet its initial burden, the motion for

summary judgment must be denied, regardless of the nonmovant's response." *Duffie*, 600 F.3d at

371 (internal quotation marks omitted).

"When the moving party has met its Rule 56[ ] burden, the nonmoving party cannot survive

a summary judgment motion by resting on the mere allegations of its pleadings." *Id.*  The

nonmovant must identify specific evidence in the record and articulate how that evidence supports

that party's claim.  *Id.* (internal quotation marks omitted).  "This burden will not be satisfied by

'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated

assertions, or by only a scintilla of evidence.'" *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540

(5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

"In deciding a summary judgment motion, the court draws all reasonable inferences in the light most

favorable to the nonmoving party." *Duffie*, 600 F.3d at 371.

III.    **Analysis**

A.    **The ERISA Claims**

Smith's first amended state court petition does not explicitly plead any cause of action under ERISA.  The Houston Pilots asserts that the claims in Counts 1 and 3 relating to pension benefits are completely preempted by § 510 of ERISA and are barred by limitations.  (Docket Entry No. 23 at 35).  Smith does not dispute that ERISA applies.  He instead contends that § 502(a), not § 510, applies, and that the claim is timely.  (Docket Entry No. 31 at 23).  The questions are which ERISA section preempts the allegations of Counts 1 and 3 relating to pension benefits and what limitations period applies.

Section 502(a) of ERISA, the statute's civil-enforcement provision, states that a "civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan."  29 U.S.C. § 1132(a).  This provision has "such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'"  *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 399–400 (3d Cir. 2004) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004)).  A state-law claim that seeks to recover benefits due under an ERISA plan is generally preempted and recharacterized as a claim under § 502(a).  *See Davila*, 542 U.S. at 210 ("[I]f an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).").

ERISA claims are not limited to those seeking denied benefits.  Preemption may also arise under § 510, ERISA's antiretaliation and antiinterference provision.  *See* 29 U.S.C. § 1140;

10

*Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 145 (1990) (stating that "there is no basis in §

502(a)'s language for limiting ERISA actions to only those which seek pension benefits"). Section

510 makes it unlawful for "any person" to discharge, fine, suspend, expel, discipline, or discriminate

against an ERISA plan participant or beneficiary for the purpose of interfering with the attainment

of any right to which the participant may become entitled under the plan. 29 U.S.C. § 1140. A

state-law claim is preempted by ERISA § 510 when "the existence of a pension plan is a critical

factor in establishing liability" and the defendant's legal duty to the plaintiff arises because of the

existence of an ERISA plan. *Ingersoll-Rand Co.*, 498 U.S. at 139–40.

Smith's amended petition seeks recovery of the "pension benefits that he would otherwise

be entitled to receive" had the Houston Pilots not "forced" his retirement on February 9, 2010.

(Docket Entry No. 23, Ex. 29 ¶ 16). He argues that his length of service for retirement was

improperly shortened by "nearly three years," reducing his pension benefits as a result. (*Id.*, Ex. 29,

¶ 13). This claim fits within § 510, which "is designed to prevent 'employers from discharging . .

. their employees'" to avoid paying ERISA plan benefits. *Bodine v. Employers Cas. Co.*, 352 F.3d

245, 250 & n. 3 (5th Cir. 2003) (quoting *Van Zant v. Todd Shipyards Corp.*, 847 F.Supp. 69, 72

(S.D. Tex. 1994)).

Smith's claims are similar to those asserted in *Ingersoll-Rand Co. v. McClendon*, 498 U.S.

133 (1990). In that case, the plaintiff alleged that his former employer fired him to avoid making

pensions contributions. Like Smith, the employee in *Ingersoll-Rand* framed his claim under state

common law, not ERISA. *Id.* at 136. The Supreme Court found that the state common-law claim

fell "squarely within the ambit of ERISA § 510" because the termination was allegedly motivated

by the employer's "desire to prevent a pension from vesting." *Id.* at 142–43. Smith's claim is

11

based on the allegation that the Houston Pilots arbitrarily forced him to retire early and improperly calculated his length of service to reduce the amount of pension benefits he was entitled to receive. The allegations in Counts 1 and 3 in Smith's first-amended petition relating to pension benefits are preempted by ERISA § 510.

ERISA does not state the statute of limitations for § 510 claims. *Muldoon v. C.J. Muldoon & Sons*, 278 F.3d 31, 32 (1st Cir. 2002); *see also McClure v. Zoecon, Inc.*, 936 F.2d 777, 778 (5th Cir. 1991). A court looks to Texas state law for the most analogous state-law limitations period. Because § 510 "proscribes specified acts of 'discharge' and 'discrimination,'" the analogous state statute of limitations applies. *McClure*, 936 F.3d at 778.

The Houston Pilots argue that the applicable limitations period is the Texas two-year statute of limitations for torts claims. *See Lopez ex rel. Gutierrez v. Premium Auto Acceptance Corp.*, 389 F.3d 504, 506–07 (5th Cir. 2004); *see also McClure*, 936 F.2d at 778–79. Smith argues that the Texas four-year limitations period for contract claims applies, because "fundamental to [his] claims are whether the Houston Pilots complied with the terms of [its] own written Articles of Organization," making this a contract rather than a tort cause of action. (Docket Entry No. 31 at 23–24); *see also* TEX. CIV. PRAC. & REM. CODE § 16.004 (providing that the limitations period for contract claims is four years). Fifth Circuit precedent forecloses Smith's argument. The court has held that "Texas's two-year statute of limitations for wrongful discharge and discrimination applies to section 510." *Lopez ex rel. Gutierrez*, 389 F.3d at 507 (citing *McClure*, 936 F.2d at 778–79). The two-year limitations period applies to Smith's state-law claims arising under § 510.

Smith's claims accrued on February 10, 2010, the date the Houston Pilots notified Smith that he was "no longer a member of the Houston Pilots" because he "no longer me[t] eligibility for

Membership requirements." (Docket Entry No. 23, Ex. 15 at HOUP 8155). *See Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1140–41 (7th Cir. 1992) (holding that the plaintiff's § 510 claim accrued when the company made and communicated the termination decision to the employee). Smith did not file his amended state-court petition asserting the pension-benefit claims until February 13, 2013—over one year after the limitations period expired.[7] (Docket Entry No. 1, Ex. E at 1). Smith's claims are time-barred. Summary judgment dismissing the ERISA claims is granted.

### B.    The Remaining State-Law Claims

The Houston Pilots seeks summary judgment on Smith's claims for quantum meruit and unjust enrichment, money had and received, and conversion. (Docket Entry No. 23 at 36–48). These claims relate to the $150,535.17 in invoices Smith paid to the Houston Pilots. (*See* Docket Entry No. 23, Ex. 29, ¶ 11). Smith contends that the Houston Pilots wrongfully charged the invoiced amounts and accepted payments for them despite the fact that Smith's work was being performed, by himself or by a surrogate. (*Id.*, Ex. 29, ¶¶ 15, 18). Smith argues in the alternative that the Houston Pilots wrongfully prohibited him from performing, or having a surrogate perform, the work. (*Id.*).

Smith has not pointed to summary-judgment evidence raising an inference that he worked, or had another pilot work on his behalf, during the time he claims that the Houston Pilots improperly invoiced him for the expenses he now disputes.[8] Smith had exhausted his PTO when he was hurt

---

[7]  Smith's claims would be untimely even if they related back to the time he moved for leave to amend his state-court petition. He moved for leave to amend on December 17, 2012, (Docket Entry No. 1, Ex. E at 4), which is more than two years after he was notified that he was no longer a member of the Houston Pilots.

[8]  The Houston Pilots charged Smith $2,019.55 for June 2009. (Docket Entry No. 23, Ex. 6E). The Houston Pilot's records show that Smith worked or had someone work for him for 16 days in June 2009. (Docket Entry No. 23, Exs. 6C–E). The $2,019.55 Smith was charged for June 2009 does not represent those 16 days. Rather, Smith was invoiced

in August 2008.  (Docket Entry No. 23, Ex. 1 at 135).  Smith did not personally perform any piloting duties after his removal from the shift-work list in May 2009.  (*See* Docket Entry No. 23, Ex. 2 at 58–59).  In his deposition, Smith acknowledged that after he was declared not fit for duty on June 25, 2009, no pilot worked on his behalf.  (Docket Entry No. 23, Ex. 1 at 29).  Time sheets confirm that neither Smith nor any other pilot performed his duties after June 25, 2009.  (Docket Entry No. 23, Exs. 6 ¶ 12; 6C).

Nor has Smith raised a factual dispute material to determining whether he was wrongfully prohibited from performing his work or having other pilots perform his work.  Following his failed physical, Smith signed a handwritten note stating that he would "not attempt to work under [his] license until [he was] fit for duty."  (Docket Entry No. 23, Ex. 4 at HOUP1348).  Texas law requires both a valid state and federal license to work as a pilot on the Houston Ship Channel, both of which require fitness for duty.  46 C.F.R. § 11.709(d); *see* TEX. TRANS. CODE §§ 66.031, 66.033(4), (8).  Smith was prohibited from piloting or from hiring another pilot to work on his behalf after he failed his physical on June 25, 2009.  The record evidence shows that the Houston Pilots prohibited other pilots from working on behalf of a pilot declared unfit for duty.  (Docket Entry No. 23, Ex. 19 at 47–48; Ex. 21 at 75).  Smith has not pointed to competent controverting evidence.

Despite being unfit for duty and the consequences that follow from that, which include not being able to work or have another pilot work as a surrogate, Smith chose to remain a member of the Houston Pilots.  By remaining a member, he was obligated to contribute to the Common Fund and pay the costs associated with being a Houston Pilot.  The Houston Pilots properly invoiced him

---

only for dates after he was declared unfit for duty on June 25, 2009.

for such costs, which Smith agreed to pay.  Smith's remaining state-law claims do not provide a

basis for the return of the money that he paid pursuant to the valid invoices.  Summary judgment

dismissing Smith's state-law claims is granted.

## IV.     Attorney's Fees

ERISA provides that "[i]n any action under this subchapter . . . by a participant, beneficiary,

or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to

either party."  29 U.S.C. § 1132(g)(1).  A motion for attorney's fees requires a two-step analysis.

*Todd v. AIG Life Ins. Co.*, 47 F.3d 1448, 1459 (5th Cir. 1995).  First, the court applies the five

factors enumerated in *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255 (5th Cir.1980).  *Todd*,

47 F.3d at 1459.  The factors are:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the
> ability of the opposing parties to satisfy an award of attorneys' fees;
> (3) whether an award of attorneys' fees against the opposing party
> would deter other persons acting under similar circumstances; (4)
> whether the parties requesting attorneys' fees sought to benefit all
> participants and beneficiaries of an ERISA plan or to resolve a
> significant legal question regarding ERISA itself; and (5) the relative
> merits of the parties' position.

*Bowen*, 624 F.2d at 1266.  A court "should consider and explicate the five *Bowen* factors, and should

do so without giving predominance or preclusive effect to any one of them; and the court should also

consider relevant non-*Bowen* factors, if there are any."  *Riley v. Adm'r of Supersaver 401K Capital*

*Accumulation Plan*, 209 F.3d 780, 782–83 (5th Cir. 2000).

The Houston Pilots has not satisfied the *Bowen* factors necessary to justify a fee award.  It

has not shown sufficient culpability or bad faith on Smith's part to support the fee award.  Nor has

it shown that the fee award would deter others under similar circumstances, that fees would benefit

all participants and beneficiaries under the ERISA plan, or that Smith's position was so wholly

lacking in merit as to justify a fee award.  The motion for attorney's fees is denied.

**V.      Conclusion**

The motion filed by the Houston Pilots for summary judgment dismissing all of Smith's

claims, (Docket Entry No. 23), is granted.  The motion for recovery of its attorney's fees, (Docket

Entry No. 25), is denied.

Final judgment is entered by separate order.

SIGNED on July 16, 2014, at Houston, Texas.

Lee H. Rosenthal
United States District Judge